### BRYANT v. GAFFNEY MFG. CO.

1. MASTER AND SERVANT—FELLOW-SERVANTS—NONSUIT.—A servant whose duty it was to pour vitriol from a bottle into a vat in a bleaching department of a manufacturing plant is a fellow-servant with the superintendent of the bleaching department. The master is not liable to him for injury caused by the breaking of an uncased bottle which he was attempting, under instructions of superintendent, to empty into the vat, the servant not knowing how thick the glass of the bottle was, but knowing that there was danger in pouring the vitriol out of the bottle in the absence of a case enclosing it.

MR. CHIEF JUSTICE POPE *dissents.*

Before KLUGH, J., Cherokee, November, 1905. Reversed.

Action by R. B. Bryant against Gaffney Mfg. Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mordecai & Gadsden, Simpson & Bomar* and *J. C. Jeffries,* for appellant, cite: *Alleged superintendent and plaintiff were fellow-servants:* 71 S. C., 56; 72 S. C., 243. *Risk was obvious:* 72 S. C., 346. *Breaking of carboy is not proof of negligence:* 69 S. C., 529.

*Messrs. Stanyarne Wilson, J. C. Otts* and *Butler & Osborne,* contra, cite: *Master must furnish safe appliances:* 72 S. C., 269; 64 S. C., 215. *Superintendent stood in place of master:* 71 S. C., 57; 72 S. C., 243; *Jackson* v. *Ry.,* 73 S. C.

December 10, 1906. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages sustained by the plaintiff, through the alleged negligence of the defendant.

The complaint alleges that the plaintiff was employed by defendant as an operative in its mill, and while handling a carboy of vitriol, was injured through the negligence of the defendant. (1) In not having said carboy cased, so as to prevent it from breaking; the thinness of the carboy and lightness of construction, rendering it a part of proper care and prudence on the part of the defendant, that the same should have been cased or boxed. (2) In not furnishing him with a safe and suitable appliance with which to work, and in not informing him of the unsafe condition of the carboy, of which he had no notice.

The defendant denied the allegations of negligence, and set up as a defense, that the injury sustained by the plaintiff was caused solely by his negligence, in that he attempted to pour the vitriol out of a bottle from which he had removed the casing, and so carelessly and negligently handled the bottle that it broke; and that the plaintiff selected from a number of carboys, one having an insufficient case, instead of one with a sufficient box, which would have prevented it from breaking.

The testimony in behalf of the plaintiff tended to show that he was working in the defendant's bleaching department, and one of his duties was to pour oil of vitriol into a mixing vat made of lead; that the carboys were manipulated by placing them on a table, then tilting them and pouring the oil into a vat; that the carboys came incased in wooden boxes, and the carboy in question was in a case when brought to the plaintiff on trucks; that when there was an attempt to lift it on the table, the top of the box became loose from the bottom, which was rotten; that the plaintiff then asked the person in charge of the bleaching department for in-

structions, and was told to get plenty of help and proceed with it as it was, but to be careful; that the plaintiff got two operatives to assist in placing the bottle on the table, and then in a careful manner he tilted it against the vat, and was preparing to pour the oil when the bottle broke, in consequence of which he was seriously injured.

The plaintiff in his testimony said: "Q. How did you attempt to pour it in? A. I was very careful. Q. Why were you careful about poring it in? A. Well, simply because I knew that the glass would not stand as much in the condition it was then in, as it would if it had a crate around it, and I was careful. Q. You knew it was dangerous to handle that glass against that vat, didn't you? A. Certainly. Q. That is the reason you handled it so carefully? A. Yes, sir."

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, which was refused.

The jury rendered a verdict in favor of the plaintiff for $1,000, and the defendant appealed.

The first assignment of error is because his Honor, the presiding Judge, erred in not granting the nonsuit on the ground that the plaintiff and the party in charge of the bleaching department were fellow-servants.

The presiding Judge took the view that the case did not depend solely upon that principle, and, therefore, made no direct ruling upon the question. He, however, stated that the question was whether the risk was obvious and was assumed by the plaintiff, and refused the motion for nonsuit, on the ground that the risk was not obvious.

The vital question presented by the exceptions is whether there was error in this ruling. While the evidence showed that the plaintiff did not know how thick the glass was, out of which the bottle was made, he, nevertheless, knew that there was danger in pouring the oil out of the bottle in the absence of a case enclosing it. The case, therefore, comes within the principle announced in *Dawkins* v. *Key Stone Granite Co.,* 74 S. C., 419, in which the cases cited likewise

show, that the plaintiff and the person in charge of the bleaching department, were fellow-servants, and the motion for nonsuit should have been granted.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE POPE *dissenting.* The plaintiff, who was about twenty years of age, was employed by the Gaffney Manufacturing Company, and had been for several months, as "second hand" in the bleaching department. On the 17th of November, 1904, the "first hand" was absent from the mill and it fell to the lot of the plaintiff to act as overseer.

He directed Jim Khon, Quincy Lemmons and Jim Smith to go out into the yard and bring in a carboy filled with vitriol. The three named went out and brought the carboy in on a truck. The carboy was incased in wood, this wooden covering slipped off and the plaintiff sent Quincy Lemmons to find the superintendent, Mr. Ballock, everything being in waiting to hear from Mr. Ballock. When he came into the room the plaintiff told him and showed him how the casing had been stripped from the carboy. When he saw everything, Mr. Ballock told the plaintiff to go ahead and pour it in. The oil of vitriol was poured from the carboy into a vat half filled with water. Vitriol is very dangerous. The plaintiff and the two boys above named placed the carboy upon the table, and after doing so they were directed to go at other work. The carboy broke while being poured into the vat and some of its contents was spilled upon the right arm and from the waist down to the shoes of the plaintiff, giving him great pain, so much so that he sprang into a large tub of water in his efforts to get relief. He was pulled out of the water and at once attended to, his clothing and shoes were removed, and after a while medical aid was rendered to him and he was carried to his home. He received medical attention from several physicians and was

away from work from six weeks to two months. He, however, did some work afterwards, both in the defendant's bleachery and workshop. He claimed to have suffered and to be still suffering pain from the wounds inflicted upon him by the oil of vitriol, and has sued the defendant for $5,000 damages.

The defendant by its answer admits that the plaintiff was in its employ as "second hand" in its bleachery, and that while handling a carboy of vitriol the carboy broke and the plaintiff suffered some injury therefrom. That the injuries to the plaintiff were caused by the negligence of the plaintiff as a sole cause thereof. That the plaintiff attempted to pour out the vitriol from a carboy from which he had removed the casing, and so carelessly and negligently handled said carboy that the same broke, and that the plaintiff selected from a number of carboys one having an insufficient case instead of one having a sufficient case, which would have protected the same from breaking.

The case came on to be tried before his Honor, Judge Klugh, and a jury, at which testimony was offered by both sides, and after the charge of the Judge, the jury rendered a verdict for $1,000 in favor of the plaintiff.

After entry of judgment the defendant appealed upon the following three grounds, which we will now dispose of in their order:

"I. Because his Honor erred in not granting a nonsuit on the ground that the alleged superintendent and plaintiff were fellow-servats. The error complained of being that all of the evidence showed that the alleged superintendent, or boss, as he was called by some, and the plaintiff, were engaged in a common enterprise, to wit: bleaching cloth, and were in the eyes of the law fellow-servants."

This Court has recognized the rule to be observed in determining who are fellow-servants, for in *Brabham* v. *Tel. & Tel. Co.,* 71 S. C., 53, 56, 50 S. E., 716, Mr. Justice Jones, in speaking for the Court, on this subject, says: "In determining who are fellow-servants, the test or rule in this

State is, not whether the servants are of different grade, rank or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had entrusted to the offending servant."

Was Ballock, the superintendent, performing the duty of the master when he gave instructions to the plaintiff to pour the vitriol from the uncased carboy into the vat? We think he was, and, therefore, there was no error in the Circuit Judge here complained of. This exception should be over-ruled.

"II. It is respectfully submitted that his Honor erred in allowing the case to go to the jury on the question of the alleged defective carboy; the error complained of being, that this plaintiff was in charge of this department, and was an experienced workman, and had the right to select such as were suitable carboys to use in the course of his employment, and, therefore, any negligence in reference to the carboys used, was the negligence of the plaintiff, and not of the defendant company."

We do not think the Circuit Judge erred in this case as here complained of. The proof shows that carboys filled with vitriol whose weight was from 130 to 140 pounds were protected by the wooden casing on the same, for such casing not only furnished a protection in the handling of the said carboys but also protected the carboys themselves. The proof there also showed that the carboy as an instrumentality was defective on account of the thinness of some portion of the carboy itself. The plaintiff was evidently unwilling to attempt to handle the carboy without casing when he sought to empty the vitriol into the vat. He, therefore, called upon the master itself for instructions in an attempt to empty the carboy without any protection from the casing. The master answered, through its superintendent, directing him to proceed: *Chase* v. *Electric Company,* 64 S. C., 215, 41 S. E.,

899; *Biggers* v. *Catawba Power Co.,* 72 S. C., 269, 51 S. E., 882; *Brabham* v. *Tel. & Tel. Co., supra.* This exception should be overruled.

"III. Because his Honor erred in allowing the questions of 'safe and suitable appliances, and not informing the plaintiff of such unsafety,' to go to the jury, the error complained of being:

"(a) That the mere breaking of the carboy itself is not sufficient proof of negligence to go to the jury.

"(b) That the plaintiff, being an experienced workman, was as familiar, and could tell as well by observation of the carboy as any one else, whether or not it was defective.

"(d) If defective, the defects were plain and obvious, and the plaintiff in using the carboy assumed all risks of injury therefrom.

"(c) That the evidence failed to show that the alleged superintendent procured or brought the carboys either boxed or unboxed.

"(d) That the plaintiff had violated the orders of the superintendent by not procuring sufficient help (being warned to be careful) to empty the said carboy into the tank or vat."

We do not think the Circuit Judge erred in allowing the questions of safe and suitable appliances to go to the jury.

(a) We do not hold that the mere breaking of the carboy itself is a sufficient proof of negligence, nor (b) that the plaintiff, being an experienced workman, was familiar with the carboy and could tell as well by observation of the carboy as any one else, whether it was defective. The plaintiff showed by his manner that he was in doubt what to do, therefore he sought instructions from the master, speaking through its superintendent. Under these circumstances these subdivisions should be overruled.

(c) We do not hold that the superintendent procured or brought the carboys either boxed or unboxed, but we do hold that he was acting for his master when he assumed to give

directions for the use, by the plaintiff, of the carboy in question. This subdivision is overruled.

(d) There is no proof that any carboy was ever used by but one person in pouring the vitriol into the vat. We overrule this subdivision.

We, therefore, overrule exception three and its subdivisions.

I think that the judgment of this Court should be that the judgment of the Circuit Court be affirmed, but the majority think otherwise, from which I *dissent.*