# Shank, Appellant, *v.* Edison Electric Illuminating Company.

*Negligence—Electric light companies—Master and servant—Fellow servant.*

Where a lineman employed by an electric light company after having located a break in a circuit, turns off the current, and directs the electrician and engineer not to turn it on again until he is heard from, and the latter disregard his request and turn on the current, and he is injured, the lineman cannot recover from his company for his injuries without showing that either the electrician or the engineer had charge of the line or switch board, or some particular part of the company's business, or what, if any, duty was delegated to either. In the absence of such proof the court is bound to hold that the electrician and engineer were fellow servants of the lineman.

Argued May 17, 1909. Appeal, No. 364, Jan. T., 1908, by plaintiff, from order of C. P. Lancaster Co., Sept. T., 1897, No. 45, refusing to take off nonsuit in case of H. J. Shank v. The Edison Electric Illuminating Company. Before MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off, HASSLER, J., filing the following opinion:

The testimony in the trial of this case showed that the plaintiff was in the employ of defendant company as a lineman, on September 15, 1895, and had been so employed for several years. On that day there was some trouble with the wires of the company, which several attempts had been made to locate, at the switch board in the power plant. After ascertaining that the trouble was not on the circuit where they supposed it to be, the plaintiff returned to the power plant, and in the presence of the foreman of the linemen, the chief engineer of the company, and its chief electrician or consulting engineer, he made another attempt, and did locate the circuit on which the trouble was. He then threw off the switch of the circuit which turned the current from it, and told these three people to leave it open. He, accompanied by the foreman part way, went over the line, and found that the wire of defendant company had come in contact with the wire of another company on East King street about one and a half miles from the power plant. He climbed a pole, and was about to properly adjust the wires when he received a severe shock and was severely injured, for which injury he seeks to recover damages in this case.

In his statement, as amended, the plaintiff alleges four acts of negligence (1) that the wires were crossed in another portion of the city; (2) that the defendant had an inexperienced foreman; (3) that its wires were not properly insulated; and (4) "that he turned or pulled the main switch that conducted electricity over the line that he subsequently went over and was injured, and at the time he did it, and, previous to his starting away from said power house, the defendant had knowledge thereof, and the representatives or officials and persons in employ of said company were informed thereof by the defendant, and also requested not to move the said switch, but to leave the same in the condition in which the plaintiff put it, that he was going out on the line to search for the trouble on the same and repair or correct it, that after the

plaintiff left, and unknown to the plaintiff, the said defendant or its employees turned the said switch without the knowledge of or informing the plaintiff thereof, and caused the electricity to pass over the wire to where the plaintiff received his injuries, etc." No testimony was produced to support the first two allegations of negligence, nor was there any testimony to show that the insulation of the wires was imperfect, or that any other kind of insulation was in general use, or if another kind had been used it would have prevented the accident. The testimony in support of the fourth act of negligence was that the chief engineer who had charge of running the engines of the company in the same room in which the switch board was located, together with the chief electrician or consulting engineer, some time after the plaintiff left to look for the trouble on the circuit on which he had located it, went to the switch board and tested for the trouble which they did not find. The engineer then changed the switch so as to turn the current on that circuit.

We entered judgment of nonsuit at the trial because we were of the opinion that the turning on of the current into the wire upon which plaintiff was at work was the act of a coemployee, for which the defendant company was not liable. In this application to strike off the nonsuit, the only question for our consideration is whether the man who had charge of the engines in the room, in which the switch board was located, and who turned on the current, or the chief electrician, or consulting engineer, who was with him, were coemployees of the plaintiff or not.

The cases are numerous in Pennsylvania where the distinction between an employee and a vice principal are pointed out. In the recent case of Hughes v. Leonard, 199 Pa. 123, it was claimed that a superintendent of a certain piece of work for the defendants was a vice principal, and that his knowledge of the defective rope, which broke and caused the accident for which the plaintiff sought to recover damages, was the knowledge of the defendant's employer. In delivering the opinion of the court Justice BROWN says: "No matter by what title called by those under him, and though he may have power to

employ and discharge them, and, in directing them in their work, hold in his hands plans and specifications, the man selected by his employer simply to direct a set of men in their performance of a special piece of work is their fellow workman; generally and properly known as their foreman. For the consequences of his incompetency, his employer must respond to his coemployee; but the risk of his negligence is assumed by those who work with him. No incompetency of Sprague is charged, and his negligence, if he was negligent, was his own, and not that of his employers. He was not acting for them as their representative when the accident occurred; he was working for them. To have bound them by his negligence, his relation to them must have been that, so clearly defined in Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617: 'A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not merely authority to superintend certain work, or certain workmen, but control of the business, and exercising no discretion or oversight of his own: New York, Lake Erie & Western R. R. Co. v. Bell, 112 Pa. 400; or secondly, one to whom he delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him: Lewis v. Seifert, 116 Pa. 628; Ross v. Walker, 139 Pa. 42; Prescott v. Ball Engine Co., 176 Pa. 459.'"

Tested by this case, the chief engineer was a coemployee and not a vice principal. He was not in entire charge of the defendant company's business, or a distinct branch of it that had anything to do with turning on or off the current into or from the wire which caused the accident. Nor does it appear that any other duty than running the engines had been delegated to him by the defendant. When he turned on the switch he was meddling with something that was not part of his duties, as shown by the testimony, and if any accident resulted from such meddling, as did here, he was responsible for it to the injured party, but it did not bind the company. What the duties of the chief electrician or consulting engineer were we

are not told. It does not appear that he had charge of the lines or switch board, or any particular branch of the defendant company's business, or what duties were delegated to him by it. The burden was on the plaintiff to prove this fact, and having failed to do so, we cannot assume that he had such powers and duties delegated to him by the defendant as made him a vice principal.

The cases of other states cited by counsel for the plaintiff to sustain the position that those at work in the power plant of an electric light company are not coemployees of the linemen, do not do so. In Zentner v. Oshkosh Co., 105 N. W. Repr. 911, it was the superintendent of the plant who turned on or failed to turn off the current. He was held to be a vice principal. It is stated in that case that if he had been engaged as chief engineer and chief electrician or consulting engineer, as here, in the common employment of ascertaining the trouble to the lines in order to repair them, he would have been a coemployee of the linemen. In Christ v. Wichita Gas, etc., Co., 83 Pac. Repr. 199, the person who turned on the current was the superintendent of the plant, who had previously told the linemen to go to work on the line, as the current had been turned off. The case also decides that a foreman is a fellow servant when laboring to accomplish a common object or purpose of the labor. In New Omaha Electric Light Company v. Baldwin, 87 N. W. Repr. 27, the superintendent was held to be a vice principal.

It is a question also, whether even though the person who turned the current into the wire, on which plaintiff was working, and which caused the accident, was a vice principal, the plaintiff did not assume the risk of his employment, and would, on this account, be unable to recover. We will not discuss this, however, as we are firmly convinced that the person who turned on the current was a coemployee of the plaintiff, and that the defendant company is not liable but that the plaintiff must look to his coemployee, if the coemployee did what he should not have done, and thereby caused the injury.

We, therefore, discharge the rule to show cause why judgment of nonsuit should not be stricken off.

*Error assigned* was order of the court refusing to take off nonsuit.

*B. F. Davis*, for appellant.—The chief engineer and electrician and advisory engineer of the company were the persons at the power house, and having charge of those premises, and the switch board was in their room under their control and observation.  It was placed there for the purpose of detecting trouble along the lines of their wires.  Where else could the servant be expected to give notice of the trouble except to these parties having charge of this same switch board.  They were the officers having the care of that particular department: Patterson v. R. R. Co., 76 Pa. 389; Zentner v. Oshkosh Gaslight Co., 105 N. W. Repr. 911; Smith v. Electric, etc., Ry. Co., 106 N. W. Repr. 829; Myhan v. Elec. Light & P. Co., 7 L. R. A. 172; Knowlton v. Edison Light Co., 90 N. W. Repr. 818; Cessna v. Ry. Co., 95 S. W. Repr. 277; Christ v. Wichita Gas, etc., Co., 83 Pac. Repr. 199; New Omaha Elec. Light Co. v. Baldwin, 87 N. W. Repr. 27; Daltry v. Media Electric Light, etc., Co., 208 Pa. 403.

*W. U. Hensel*, for appellee.—The engineer who turned on the switch was a coemployee: New York, Lake Erie, etc., R. R. Co. v. Bell, 112 Pa. 400; Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617; Lewis v. Seifert, 116 Pa. 628; Ross v. Walker, 139 Pa. 42; Prescott v. Ball Engine Co., 176 Pa. 459; Zentner v. Oshkosh Gaslight Co., 105 N. W. Repr. 911; Christ v. Wichita Gas, etc., Co., 83 Pac. Repr. 199; National Tube Works Co. v. Bedell, 96 Pa. 175; Ricks v. Flynn, 196 Pa. 263; Weger v. Penna. R. R. Co., 55 Pa. 460; Duncan v. Roberts Co., 194 Pa. 563; Keystone Bridge Co. v. Newberry, 96 Pa. 246; McGinley v. Levering, 152 Pa. 366.

Plaintiff had, by his employment and experience, assumed the risk of the danger from which he suffered: Epperson v. Tel. Cable Co., 50 S. W. Repr. 795; Hart v. Allegheny County Light Co., 201 Pa. 234; Combs v. Tel. Co., 218 Pa. 440; Vant v. Roelofs, 217 Pa. 535; Best v. Staple Co., 218 Pa. 202; Kuhns v. Frick Coke Co., 216 Pa. 385; Taylor v. Penn Steel Castings,

etc., Co., 217 Pa. 269; Cisney v. Penna. Sewer Pipe Co., 199 Pa. 519; Nye v. Penna. R. R. Co., 178 Pa. 134.

OPINION BY MR. JUSTICE STEWART, June 22, 1909:

The plaintiff was a lineman in the employ of the defendant company. An interruption having occurred in the circuit, he ascertained by using the switch board at the power plant where the trouble was on the line. Before proceeding to make the necessary repair, in the presence of his foreman, the company's electrician and the engineer in charge of the engine, he turned off the current, and told those present not to turn it on until he was heard from. He then started in company with his foreman to the place of interruption. Within a half an hour after he left, the electrician and the engineer went to the switch board and tested the circuit. No break being disclosed by the test, the engineer turned on the current, with the result that the plaintiff, then engaged with the wires in repairing the break, received the charge and was severely injured. Manifestly the plaintiff was injured through negligence not his own. Was it the company's negligence or the negligence of a fellow employee? In the general business in which defendant is engaged, furnishing electric light and power, the interruption of the circuit from one cause and another is a matter of such frequent occurrence, that it is necessary to keep steadily employed trained men whose business it is to make repairs in the line and maintain it in working condition. It is alike necessary to employ others of technical skill to co-operate in this general work. The whole business of repairing the line, whether regard be had to the actual work on the line, or the care of the circuit while men are so engaged, must necessarily be done by employees engaged in the general business under the direction of the employer. It would be wholly impracticable for an employer to personally attend to such detail, and therefore it is that such work may be properly, and commonly is, intrusted to employees. Where this is so the duty of the employer extends no further than to employ competent and suitable fellow servants and supply them with everything needed for the work. In all such cases the employee is presumed to have con-

templated that work incidental to that which he engaged to do, would be done by fellow employees, and he is held to have assumed all risk for their negligence in doing it. Here the whole dependence of the plaintiff was on the faithful and intelligent co-operation of the electrician and engineer, both of whom were admittedly competent. Both were in the employ of the company; neither of them, however, exercised any supervisory power over the plaintiff or the work. They simply assisted in the accomplishment of a common object, and were strictly coemployees: New York, Lake Erie & Western R. R. Co. v. Bell, 112 Pa. 400; Hughes v. Leonard, 199 Pa. 123. What was done by them, or either of them, in the matter of the turning on of the current, could not be regarded as the act of the defendant company, except it be held to be an absolute nondeligible duty of the employer to keep constant watch upon the switch to prevent the current being turned on every time an employee attempts to repair a line. We know of no authority which enforces such obligation. The learned judge directed a nonsuit, which he afterwards refused to remove, on the ground that it nowhere appears in the evidence that either electrician or engineer had charge of the line or switch board, or any particular part of defendant's business, or what, if any, duty was delegated to either. The opinion filed in discharging the rule to take off the nonsuit, amply vindicates the conclusion reached. Judgment is affirmed.