12566

## MADDOX v. STEEL HEDDLE MANUFACTURING CO.

(147 S. E., 327)

On Rehearing, March 15, 1929

*Messrs. Haynsworth & Haynsworth,* for appellant, 

*Messrs. Price & Poag,* and *P. A. Bonham,* for respondent,

January 23, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This was an action for damages for the sum of $25,000 for personal injuries, and was tried before Judge Bonham, at Greenville, and a jury, and resulted in a verdict for the plaintiff in the sum of $12,500.

A motion was made for a directed verdict by the defendant which was refused; a motion for a new trial was made and refused. Defendant appeals, and by ten exceptions challenges the correctness of Judge Bonham's rulings, and alleges error in not directing a verdict for the defendant on grounds asked for: In charging certain requests of plaintiff; in refusing to charge certain requests of defendant; and modifying defendant's requests to charge; and in not directing a verdict on the grounds asked for.

These exceptions are overruled under: *Munroe v. Williams,* 35 S. C., 576, 15 S. E., 279; *Seyle v. Charleston Terminal Co.,* 109 S. C., page 99, 95 S. E., 178; *Gill v. Ruggles,* 97 S. C., 278, 81 S. E., 519; *Crews v. Sweet,* 125

S. C., 303, 118 S. E., 613, 29 A. L. R., 43; *Pinckney v. Atlantic Coast Line R. Co.*, 92 S. C., 557, 75 S. E., 964, and cases therein cited.

The second exception, asking for a directed verdict, is based upon the ground that "the evidence admits of no other conclusion than that the risk was assumed."

We cannot see the slightest evidence of assumption of risk in this case. The contention that this boy should be charged with assuming the risk here is utterly without foundation. He was a hand worker and knew nothing whatsoever about the machinery, and particularly the machine which injured him. His work did not require him to come in contact with the machinery at all. He had never been warned or instructed in any way about the machinery. He was not in the slightest danger from the machine at his regular place of work. He was called from this place of safety to a place which proved to be dangerous. Lawrence Bowen, the expert in charge of the wire machine, testified that the boy did not know anything about the machinery. Superintendent Wood testified that he had never been instructed about the machinery and was not in the slightest danger where he worked.

This Court has clearly held that where the facts as to assumption of risk are susceptible of more than one inference, the case presents a question for the jury. *Whisonant v. Atlantic & C. A. L. Ry. Co.*, 86 S. C., page 300, 68 S. E., 566.

In the case of *Berry v. Dillon Mills*, 120 S. C., 333, 113 S. E., 348, the plaintiff was an inexperienced cotton mill employee, and was struck in the eye by a belt which ran off a pulley. It was contended in that case that the risk was patent. The Supreme Court, in disposing of appellant's contention that a directed verdict should have been granted because plaintiff has assumed the risk of this particular injury, said: "But even if he knew that the defect existed, it does not follow that he understood and appreciated the danger. * * * It is essential that the servant understand that

there is danger and have some intelligent appreciation of it. * * * Whether the plaintiff knew the machine here was defective, and, if so, whether he fairly comprehended and appreciated the danger of such defect were clearly questions for the jury's determination."

The third to eighth exceptions, inclusive, allege error in the charge of the presiding Judge on the question of the law of fellow servants.

Here plaintiff sustained an injury inflicted by the carelessness of the master himself. If Wood had been the sole owner of the plant, it would have been impossible to avoid legal liability. The employer (the master) was a corporation, and Wood was its vice principal or superintendent.

Wood was the superintendent. He hired and fired all the help. He gave instructions about the work. Wood testified himself that he had absolute control over that workroom; that at the particular time he was giving the boy instructions about his work. He found the machine in operation, and because the regular operator (Bowen) was then at another task, he took charge and was working it himself.

It was the master's duty to supervise the operation of all machinery, and to keep it safe and not to permit it to be operated in a dangerous way, thus endangering the lives of other employees. This was a nondelegable duty.

The master was bound to furnish a safe place and keep it safe by reasonable supervision. The master must protect employees, especially young and inexperienced employees, from known dangers. The fact that the wire flew through the air and destroyed the plaintiff's eye conclusively establishes a dangerous place.

"That the environment of Kell's work at the time of his injury was dangerous is established by the event." *Kell v. Rock Hill Fertilizer Co.*, 123 S. C., 199, 116 S. E., 97.

Could the master have anticipated this danger? All the testimony shows that he could. Bowen knew of the danger

and guarded against it. The exercise of slight care would have saved the boy.

"In the light of hindsight, either Kell ought not to have been working on the beam, or the gin pole ought not to have been in that position, unsecured." *Kell v. Rock Hill Fertilizer Co., supra.*

In *James v. Fountain Inn Mfg. Co.,* 80 S. C., page 236, 61 S. E., 392, the Court held: "The testimony tends to show that Moon [the chief engineer] was representative of the master in that his duty was to see that the machinery was in good order. Therefore his direction to the plaintiff to remedy the situation caused by the defective machinery was the direction of the master, and the injury sustained in obedience to such instruction was not the result of the act of the fellow servant."

The vice principal here ordered the plaintiff to come to him and then caused his injury by doing an act which it was the master's duty not to do.

In *Shaw v. Arkwright Mills,* 80 S. C., 567, 61 S. E., 1018, the plaintiff was a young cotton mill employee, 21 years of age, but inexperienced. He was placed in charge of one Amos Gibson for instruction, who failed to warn and instruct him about certain features of the machine upon which he was placed to work. He lost two fingers on his left hand; and, among other grounds, the defendant asked that his case be nonsuited because the negligence of Gibson in failing to warn him was the negligence of a fellow servant. The Court said: "Under the circumstances Andrews was the represenative of the master in ordering the plaintiff to deposit the box on end, and if in giving such directions, he was guilty of negligence, which resulted in the plaintiff's injury, the defendant would be liable."

In the *Kell case, supra:* "But no statement of principle or reference to other cases is decisive, or perhaps even greatly serviceable, in solving the concrete question here presented. The ultimate touchstone is practical common sense applied to the facts of the particular case."

In *James v. Fountain Inn Mfg. Co., supra,* the Court used the term "usual test." In the *Kell case,* the phrase was "accepted test." In *Gunter v. Graniteville Mfg. Co.,* 18 S. C., page 270, 44 Am. Rep., 573, one of the cases cited by the Supreme Court as its authority in the *Brabham case,* 71 S. C., 53, 50 S. E., 716, these words are used: "The true test is whether the person in question is employed to do any of the duties of the master."

In *Couch v. Charlotte, C. & A. R. Co.,* 22 S. C., 564, this language appears: "In this confusion, we think we have discovered that there is a manifest tendency in the latest authorities to follow the principle and to make the employer responsible wherever the act complained of was done by one placed in authority by the principal to discharge some of the duties of the principal, and in regard to which he is the representative of the company and as such entitled to be obeyed."

We are of the opinion that the case as a whole was free from error as complained of, and all exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that a verdict should have been directed in favor of the defendant, upon the ground that no other reasonable inference can be drawn from the evidence, than that the injury sustained by the plaintiff was the result of the negligence of a fellow servant; at least, that a new trial should be ordered for obvious errors in the charge of the presiding Judge.

It appears that in the operation of a machine, consisting of a drum, upon which wire was wound, and from which it was unwound and conducted to another machine, which flattened it, the wire was allowed to "run out" on the drum, while the machinery was running at full speed; the effect of which was that the loose end of the wire flew through the air and struck the plaintiff, causing the injury complained of, the loss of an eye.

The regular operator of the machinery was one Bowen, who temporarily had left his work. The foreman of the room, one Wood, for the moment took the place of Bowen in the operation of the machinery.

(It will be observed that Wood is constantly referred to, in the opinion of the Chief Justice, as the "superintendent" of the defendant's plant; as a matter of fact, the *manager* of the entire plant was one Hampton Smith, and Wood was "foreman of the shop" in which Bowen and the plaintiff were at work.)

The plaintiff was not engaged at all about the machinery in question, but was at work in another part of the room. The foreman wished to send a message to some one outside of the mill, and called the plaintiff to come to him. While the plaintiff, standing near Wood, was receiving or ready to receive instructions, Wood allowed the wire to run off of the drum, while the machinery was running at full speed; the end of the wire flew through the air and struck the plaintiff. It is conceded that Wood was negligent in operating the machinery; as the wire was about to run off of the drum, he should have slackened the speed of the machinery, so that the end of the wire would have lost the momentum created by the operation of the machine and would have been harmless.

The main question in the case is the relation which Wood sustained to the plaintiff. The defendant contends that he was a fellow servant; the plaintiff, that he was a representative of the master.

I do not think that it can be disputed that if the injury had been caused, in the manner stated, by the negligent operation of the machine by Bowen, the regular operator, there could be a doubt as to the immunity of the defendant from liability on account thereof.

The foreman Wood took Bowen's place, and was engaged in the precise operation that Bowen had been engaged in. The fact that Wood was a superior officer, having the right

to control the services of the plaintiff, does not affect the relation between Wood and the plaintiff, if the work was within the ordinary operation of the machine. It has been over and over again held by this Court that the character of the work in which the superior officer was engaged, and not the grade of the servant, is the touchstone in determining the existence or otherwise of the relation of fellow servant.

The Court has so declared whenever the question has arisen, in *Gunter v. Graniteville Mfg. Co.*, 18 S. C., 270, 44 Am. Rep., 573; *Couch v. Charlotte, C. & A. R. Co.*, 22 S. C., 557; *Calvo v. Charlotte, C. & A. R. Co.*, 23 S. C., 526, 55 Am. Rep., 28; *Jenkins v. Richmond & D. R. Co.*, 39 S. C., 507, 18 S. E., 182, 39 Am. St. Rep., 750; *Wilson v. Charleston & S. R. Co.*, 51 S. C., 96, 28 S. E., 91; and many others.

In *Brabham v. American Telephone & Telegraph Co.*, 71 S. C., 53, 50 S. E., 716, it is said: "In determining who are fellow servants, the test or rule in this State is not whether the servants are of different grade, rank or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had entrusted to the offending servant."

The *Brabham case* has been reaffirmed in the following cases: *Martin v. Royster Guano Co.*, 72 S. C., 237, 51 S. E., 680; *Bryant v. Gaffney Mfg. Co.*, 75 S. C., 487, 56 S. E., 9; *Shirley v. Abbeville Furniture Co.*, 76 S. C., 452, 57 S. E., 178, 121 Am. St. Rep., 952; *Tucker v. Buffalo Cotton Mills*, 76 S. C., 539, 57 S. E., 626, 121 Am. St. Rep., 957; *Lyon v. Charleston & W. C. R. Co.*, 77 S. C., 328, 58 S. E., 12; *Pagan v. Southern R. Co.*, 78 S. C., 413, 59 S. E., 32, 13 Ann. Cas., 1105; *James v. Fountain Inn Mfg. Co.*, 80 S. C., 232, 61 S. E., 391; *Goodman v. Western Union Tel. Co.*, 87 S. C., 449, 69 S. E., 1089; *Hunter v. D. W.*

*Alderman & Sons,* 89 S. C., 502, 71 S. E., 1082; *Gibbes v. Planters' Fertilizer & Phosphate Co.,* 93 S. C., 193, 76 S. E., 464; *Stanton v. Interstate Chemical Corp.,* 97 S. C., 403, 81 S. E., 660; *Leopard v. Beaver Duck Mills,* 117 S. C., 122, 108 S. E., 190; *Kell v. Rock Hill Fertilizer Co.,* 123 S. C., 199, 116 S. E., 97—many of them quoting the above extract with approval.

In the case of *McAlister v. Southern R. Co.,* 130 S. C., 477, 126 S. E., 633, in an opinion by the present Chief Justice, it is said: "The test of fellow servant is not the grade of employee but the character of the work."

In *Kell v. Rock Hill Fertilizer Co.,* 123 S. C., 199, 116 S. E., 97, the Court said: "Hence the accepted test in this jurisdiction, in determining who are fellow servants, 'is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had entrusted to the offending servant.' " Citing *Brabham v. American Telephone & Telegraph Co.,* 71 S. C., 53, 50 S. E., 716, and *Martin v. Royster Guano Co.,* 72 S. C., 237, 51 S. E., 680.

When therefore the foreman took up the work of Bowen in the operation of the machinery, he stepped into Bowen's shoes as a fellow servant of the plaintiff; and if there had not entered into the discussion any other consideration than the injury to the plaintiff as a result of Wood's negligent operation of the machinery, there could have been no question of the defendant's immunity.

Counsel for the plaintiff, however, advance a theory to this effect: The defendant owed the plaintiff the duty of exercising reasonable care to provide him with a reasonably safe place to work; the foreman was the representative of the master, having the authority to direct the movements of the plaintiff; he called the plaintiff from a safe place to the place at which he was injured; the place to which he was called was made unsafe by the negligence of the foreman

in the operation of the machinery; *that therefore the master must be deemed to have breached its duty of providing the plaintiff with a safe place to work.*

The theory is ingenious, but specious and unsound; it assumes that because the plaintiff was injured at the place to which he had been called by the foreman, the place was necessarily an unsafe place within the spirit of the safe-place rule; it loses sight of the principle that the rule is one of *construction or provision,* in reference to the place of work, and not the sporadic danger created by the negligent *operation* of a machine in good order.

There was nothing wrong with the *place* to which the plaintiff was called; it is true that it became unsafe, but it became so by the act of the foreman, who at the time was a fellow servant of the plaintiff; and the universal rule is that if a safe place becomes unsafe by reason of the negligent operation of a machine by a fellow servant, accompanied by no other delinquency which could be imputed to the master as negligence, it becomes a delinquency of *operation* and not of *construction or provision,* and the safe-place rule has no application.

In every case of injury resulting from the negligent operation of a machine, tool, or appliance, the particular spot where the injured servant happened to be standing was for the moment made unsafe, not by the breach on the part of the master of his nondelegable duty of providing safe instrumentalities and a safe place, *but by the negligent operation of such safe instrumentalities;* the safe-place rule under such circumstances has no application; otherwise there could be no instance of accidental injury but what could be referred to the safe-place rule. It cannot therefore be said that the safe-place rule required the master, in this case, to guard against the negligent operation of the machine by the foreman, or by any other fellow servant of the injured servant, so as to constitute the duty of the foreman a nondelegable duty of the master.

As is said by Labatt, quoted with approval in *Kell v. Rock Hill Fertilizer Co.,* 123 S. C., 199, at page 203, 116 S. E., 97, 99: "The essence of the problem is to discover some rational basis upon which the theory that the master is under an absolute obligation to use due care in providing and maintaining a *safe environment* for his servants shall be adjusted to the practical situation which results from *the fact that any delinquency of a servant which actually eventuates in injury to a fellow servant must, in the very nature of the case, operate so as to render the environment of the sufferer unsafe."* (Italics added.)

The quotation begins with the words: "It is sufficiently evident that, for the determination of the question what work may ordinarily be entrusted to servants without liability to their fellow servants for their negligence, the essence, etc." 4 Labatt (2d Ed.), § 1515; (1st Ed.), § 585.

Mr. Labatt continues: "It is clear that the problem is not susceptible of the simple solution * * * that a delinquency may constitute a breach of the master's duty to furnish a safe place of work *merely because the place of work is thereby made unsafe for the time being."* (Italics added.)

This is the nerve of the case. It completely explodes the theory of the plaintiff that because he was injured by the negligence of the foreman, at a place made temporarily unsafe thereby, the master has breached his duty to provide him with a reasonably safe place to work.

Mr. Labatt further says in the same section: "All the authorities are agreed as to the general proposition that a master who has furnished a reasonably safe place to work in, and reasonably safe appliances to work with, cannot be held liable to a servant whose co-servant has, by his negligence, rendered that place or those appliances unsafe, without the master's fault or knowledge.

In *Charping v. Toxaway Mills,* 70 S. C., 470, 50 S. E., 186, the plaintiff was injured by the collapse of a scaffold

upon which he was at work—unquestionably a place of work supplied by the master and as to which he owed the duty of maintaining it in a reasonably safe condition. The collapse was due, not to any defect in the scaffold, but to the negligence of the plaintiff's fellow servants who were not charged with the duty of, or engaged in, keeping the scaffold safe. The Court held that the injury could not be charged to a breach of the master's duty to keep the place safe. In *McAlister v. Southern R. Co.,* 130 S. C., 458, 126 S. E., 627, the Court said: "The test of fellow servant is not the grade of employee but the character of the work. *Was it the performance of some duty the master owed to the injured servant?"* (Opinion by the present Chief Justice.) Citing *Leopard v. Beaver Duck Mills,* 117 S. C., 124, 108 S. E., 190; *Kell v. Rock Hill Fertilizer Co.,* 123 S. C., 207, 116 S. E., 97.

In *Kell v. Rock Hill Fertilizer Co.,* 123 S. C., 199, 116 S. E., 97, the Court quotes with approval the following from La Batt, § 586 (1st Ed.) : "The most general form in which the limits of a master's obligations are susceptible of being stated is that *he is not bound to supervise the merely executive details of the work to be done by his servants."*

This Court added (Justice Marion) : "If the danger in the servant's environment which eventuates in his injury is caused by the negligence of a fellow servant in carrying out a detail of the work in a manner attributable to the fellow servant's own delinquency and not to any breach of the master's nondelegable duties, the risk of such injury, implied from the contract of service, is held to have been assumed by the injured servant, and the master is absolved from liability."

In *Wilson v. Charleston & S. R. Co.,* 51 S. C., 79, 28 S. E., 91, it is said: "But if an employee sustains an injury through the negligence of a co-employee, while such co-employee *is performing the duties of the master,* the master cannot defeat his recovery on the ground that they are fellow servants."

In *Gibbes v. Planters' Fertilizer & Phosphate Co.*, 93 S. C., 193, 76 S. E., 464, the Court said: "Plaintiff testified that, if the bags in the pile had been 'tied,' they would not have fallen; that he was sent on the pile by the colored foreman, who was also a common laborer. There was no testimony tending to show that the foreman was a vice-principal, or that any representative of defendant had ordered the bags piled that way, or knew that they had been piled that way. There was, therefore, no evidence of negligence on the part of the defendant."

In *American Bridge Co. v. Seeds* (C. C. A.), 144 F., 605, 11 L. R. A. (N. S.), 1041, the Court, referring to the safe-place duty of the master, said: "Nevertheless, this duty has its rational and legal limits. It does not extend to the guarding of the safety of a place or of a machine against its negligent use by the servants. The risk that a safe place will become unsafe, or that safe machinery will become dangerous, by the negligence of the servants who use them, is one of the ordinary risks of the employment which the servants necessarily assume when they accept it. *It is a risk of operation, and not of construction or provision;* and the duty to protect place and machinery from dangers arising from negligence in their use is a duty of the servants who use them, and not that of the master who furnishes them."

The Court further said that the master is not liable for "a thousand other acts of negligence of servants of railroad companies, which make the places where their fellow servants are employed and the machinery which they are using more dangerous. But the duty of the master does not extend to guarding the places or the machinery he furnishes against the dangers of such acts. They are violations of the primary duty of the servants."

In *Kinnear Mfg. Co. v. Carlisle* (C. C. A.), 152 F., 933, it is held that the nondelegable duty of the master, in reference to providing a reasonably safe place to work, *is a duty of construction and provision and not of operation.*

In that case the Court said: "Nor is the case as presented in the petition taken out of the fellow servant rule on the ground that Grossman's negligence was a breach of the defendant's absolute, positive, personal, and nondelegable duty, as master, to provide a reasonably safe place in which to work, or a reasonably safe appliance with which to work, or a reasonably safe method of doing its work. This duty, as has been pointed out, is a duty of construction and provision, and not of operation."

In *Baird v. Reilly* (C. C. A.), 92 F., 884, the Court said: "When, however, it appears that the working place originally, and when the employee was sent to do the work there, was reasonably safe, but became unsafe at the particular time of the accident by causes that could not have been anticipated, by exigencies created in carrying out the details of the work, *or by the neglect of a fellow servant,* a different rule is applicable."

In *Brown v. J. S. Scofields Sons Co.,* 174 N. C., 4, 93 S. E., 381, the plaintiff was working upon a tower underneath a workman painting it; the painter negligently allowed a pair of pliers to drop and injure the plaintiff. It was contended that the injury was due to the breach of the master's safe-place duty. The Court, however, denied the contention upon the authority of *Armour v. Hahn,* 111 U. S., 313, 4 S. Ct., 433, 28 L. Ed., 440, saying: "The 'place' itself was perfectly safe, but the actual situation from which the injury arose was a temporary and changing incident of the performance of the work and was, in effect, the negligence of a fellow servant, which could not possibly have been foreseen or provided against by the defendant."

In *Gulf Transit Co. v. Grande* (C. C. A.), 222 F., 817, quoting syllabus, it was held: "While it is the primary duty of the master to use reasonable care to provide the servant with a safe place in which to work, when that has been done, he is not liable for an unsafe condition resulting from the manner in which the workmen carry on their work."

In *Howard v. Denver & R. G. R. Co.* (C. C.), 26 F., 837, the Court said: "The negligent use by one employee of perfectly safe machinery will seldom be adjudged a breach of the master's duty of providing a safe place for other employees. Such a construction would make any negligent misplacement of a switch, any negligent collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a safe place."

In *Stourbridge v. Brooklyn City R. Co.*, 9 App. Div., 129, 41 N. Y. S., 128, the Court, in discussing the contention of the plaintiff that the case fell within the principle that a master is bound to furnish a reasonably safe place for his servants to work, said: "If this rule is applicable to the present case, then it would follow that for the negligence of any servants to whom the master had committted the duty of providing a safe place, the master himself would be liable. I think, however, that this is not the case of 'a place,' within the meaning of the rule. As stated in *Butler v. Townsend*, 126 N. Y., 105, 26 N. E., 1017, doubtless, in one sense of the term, the employee must always be in some place; and doubtless, also, the place, in a certain sense, is not safe if an accident occurs there."

In *Herman v. Port Blakely Mill Co.* (D. C.), 71 F., 853, the Court beautifully expands the idea I am endeavoring to present: "The word 'place,' in my judgment, means the premises where the work is being done, and does not comprehend the negligent acts of fellow servants, by reason of which the place is rendered unsafe or dangerous. The fact that the negligent act of a fellow servant renders a place of work unsafe is no sure and safe test of the master's duty and liability in this respect, for it may well be said that any negligence which results in damage to some one makes a particular spot or place dangerous or unsafe. To so hold would virtually be making the master responsible for any negligence of a fellow servant which renders a place of work unsafe or dangerous. It would be doing the very thing which

it is the policy and object of the general rule not to do. It would create a liability which the master could not avoid by the exercise of any degree of foresight or care."

In *Armour v. Hahn,* 111 U. S., 313, 4 S. Ct., 433, 28 L. Ed., 440, it was held: "The obligation of a master to provide reasonably safe places and structures for his servants to work upon does not oblige him to keep a building, which they are employed in erecting, in a safe condition at every moment of their work, so far as its safety depends on the due performance of that work by them and their fellow servants."

Referring to the duty of the master to provide his employees with a safe place of work and to his responsibility for injuries resulting from the place becoming unsafe through the negligence of laborers in the manner of conducting the work, it was said by the Court in the case of *Kriegh v. Westinghouse, Church, Kerr & Co.,* 214 U. S., 249, 29 S. Ct., 619, 53 L. Ed., 984: "But while this duty is imposed upon the master, and he cannot delegate it to another and escape liability on his part, nevertheless the master is not held responsible for injuries resulting from the place becoming unsafe through the negligence of the workmen in the manner of carrying on the work, where he, the master, has discharged his primary duty of providing a reasonably safe appliance and place for his employees to carry on the work, nor is he obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant and his fellow workmen." Citing *Armour v. Hahn,* 111 U. S., 313, 4 S. Ct., 433, 28 L. Ed., 440, and *Perry v. Rogers,* 157 N. Y., 251, 51 N. E., 1021.

I do not at all agree with the following statement in the opinion of the Chief Justice: "It was the master's duty to *supervise the operation of all machinery,* and to keep it safe and not to *permit it to be operated in* a dangerous way, thus endangering the lives of other employees. This was a nondelegable duty."

The master's duty, as I understand the law, is to exercise reasonable care in providing the servant with reasonably safe and suitable tools, appliances, and place of work; his duty is performed when he has done this; the *operation* of the machine, safe and suitable, must necessarily be committed to human agencies. If these agencies fail in their duty, the fault is with them and not with the master. The adoption of the rule stated would make the master an insurer of the proper operation of the safe and suitable machinery supplied by him and would entirely abrogate the rule that the master is not liable to a servant for an injury caused by the negligent operation of safe machinery by a fellow servant.

As is said in 18 R. C. L., 738: "But from the rule that a master in providing safe appliances for his employees cannot invoke the defence of fellow servant to evade liability, it does not follow that an employer can be held responsible for the transitory negligent act of an employee in the use of a proper tool or instrumentality in a negligent manner, of which the employer can have no knowledge. If the appliances to be used are in themselves as safe as can reasonably be expected, and the danger arises necessarily in the doing of the work, the master discharges his duty when he furnishes to the employee suitable means of obviating the danger. The failure on the part of a co-employee to use such means is the act of a fellow servant. It is not the breach of a duty which rests upon the master as a nondelegable duty." Citing *Wickham v. Detroit United Ry.*, 160 Mich., 277, 125 N. W., 22, 52 L. R. A. (N. S.), 1082, 136 Am. St. Rep., 436, Ann. Cas., 1913-E, 1069; *Shank v. Edison Co.*, 225 Pa., 393, 74 A., 210, 30 L. R. A. (N. S.), 46, 17 Ann. Cas., 465; *Bridges v. Los Angeles Pac. Ry.*, 156 Cal., 492, 105 P., 586, 25 L. R. A. (N. S.), 914; note to 17 L. R. A. (N. S.), 568.

I think that the presiding Judge was clearly in error in refusing to charge without modification the defendant's fifth request. It was as follows: "Were Wood and Conway Mad-

dox fellow servants? In determining who are fellow servants, the test or rule in this State is not whether the servants are of different grade, rank or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had entrusted to the offending servant."

His Honor modified that request by saying, among other things: "And I may add, that that is not the sole test. To my mind that does enter as a measure of determining whether they were fellow servants, but that alone *does not determine the question.*"

The request was a literal reproduction of the principle as announced in the *Brabham case,* as will appear by comparing it with the quotation from that case set forth above herein.

The error is accentuated by the constant charge of the presiding Judge that if the servants were not of the same grade or rank, the fellow servant rule could not be applied.

For instance in his general charge his Honor charged, in effect, that to be fellow servants they must be "engaged in the same line of business and upon an equality of footing in the performance of the work and character and grade of the work which they are to do"; that they must be in the same line of work and "working on a level"; that where one is injured by the negligence of another who occupies a position above that of the injured person, the doctrine of fellow servant would not apply.

And again in charging plaintiff's requests he charged, in effect, that a superintendent or foreman could be a fellow servant with one under him only by completely divesting himself of his superiority, "assuming the position of a common laborer, put himself on a plane of equality with the other laborer, and then he would be a fellow servant."

The only fair conclusion to be reached from a reading of the entire charge is· that the presiding Judge did not instruct the jury that the test was the character of the act being performed by the offending servant, which this Court has said is the test; that he charged the jury repeatedly and emphatically that that was not the primary or controlling test, but that the primary or controlling test was the rank, grade, or authority of the offending servant, which this Court, time and time, has said is not the test.

ORDER OF PETITION FOR REHEARING

*Per Curiam.* Upon consideration of the petition herein, it is ordered that the following statement in the opinion of the Chief Justice be expunged:

"It was the master's duty to supervise the operation of all machinery, and to keep it safe and not permit it to be operated in a dangerous way, thus endangering the lives of other employees. This was a nondelegable duty."

With this modification of the opinion, the petition is dismissed, and the stay of remittitur is revoked.