13919

PRICE v. AMERICAN AGRICULTURAL CHEMICAL CO. *ET AL.*

(176 S. E., 352)

*Messrs. John Hughes Cooper, A. F. Spigner* and *Edwin H. Cooper,* for appellant,

*Messrs. Herbert & Dial,* for respondent,

October 8, 1934.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The plaintiff, as administratrix of the estate of her son, Harry B. Price, deceased, instituted this action against the American Agricultural Chemical Company and Victor R.

Truesdale, its superintendent, for the recovery of damages on account of the death of the young man, alleged to have been occasioned by the negligence of the defendants. The trial, before his Honor the late lamented Judge Townsend, in the Court of Common Pleas for Richland County, resulted in a nonsuit as to both the defendants, and, from the order thereon, the plaintiff has appealed.

Certain facts developed in the evidence, offered by the plaintiff, appear to be admitted by both sides. But, even if they are not conceded by the defendants, it would be our duty to consider them in passing on the nonsuit order, since there was some testimony to establish their truth.

Young Price had been employed as a helper in the Cayce plant of the corporate defendant for several years preceding the time of his death. In his work, he was known as a "chamber walker." His duties consisted in "walking the chambers," taking down "the readings of the temperature of the Fahrenheit thermometers"; he had to watch certain acid tanks, and see that they did not get too full and run over; the pumps, operated by an electric motor, had to be started and stopped by him; he took care of certain machinery, was required to make certain minor repairs, to keep it oiled and in working order; and was particularly charged with "dressing the belts" with a certain liquid, which, generally, was put on while the machines were standing still. In this work of dressing the belts, the employee had to come in close contact with the machinery, especially the belts. It was the duty of the chamber walker, and no one else, "to look after the switch"; that is, the starting and stopping of the machinery in his charge. When the tanks were getting too full of acid, and were about to run over, it was necessary for certain pumps to be put in motion by the throwing of the switch. Sometimes the chamber walker, when resting, and the machinery was not running, might sit on one of the big belts.

The plant was operated on Sundays as well as weekdays. The superintendent, Mr. Truesdale, in the discharge of his

duties, on these Sundays visited the plant for inspection purposes. On the afternoon of Sunday, September 16, 1929, when young Price was at the plant, engaged in his duties as chamber walker, Mr. Truesdale made his usual visit "to see if everything was going well. He found that the chamber walker had not started the pumps an hour before, as they should have been started, and that as a result the acid tanks on the upper floor were about to run over and drench the plant with sulphic sulphuric acid. He called the chamber walker but got no answer. He then pulled the switch to start the pumps, which would relieve the very critical and dangerous situation. Upon hearing an unusual noise, he stopped the pump and found the body of the chamber walker (plaintiff's intestate) on the floor near the large air compressor. The guard rails around the air compressor were torn loose, apparently by the accident." Mr. Truesdale immediately called for the company's physician, and notified members of the young man's family of the accident. Upon the arrival of the doctor, young Price was found to be dead. No one was present in the plant when the accident took place and Price was killed except that young man and Mr. Truesdale.

The cause of the death of young Price, and the manner in which it occurred, in the evidence offered by the plaintiff, came from testimony given by Mr. W. H. Gibson, who, as a witness, related what had been told to him by Mr. Truesdale.

The trial Judge ruled that the statements of the defendant Truesdale to Gibson, after the occurrence of the accident, were admissible only against Truesdale, and any statement made by Truesdale at the time was inadmissible against his codefendant, the chemical company. That ruling raises the first question involved in the appeal. We are of the opinion that the very learned Circuit Judge committed error in his ruling.

Gibson, on the day of the accident, was in the drug store conducted by Dr. W. A. Price, a brother of the deceased, in

the City of Columbia, some two miles distant from the place of the accident. On his receipt of a telephone message as to the accident, Dr. Price, accompanied by Gibson, went hurriedly in an automobile to the scene. Dr. Price requested Gibson to obtain information as to the accident, while Dr. Price went to inform his mother of the death of her son. The conversation with Truesdale, related by Gibson, took place in the plant of the chemical company in the presence of Mr. Moore, general superintendent of the company, who was a superior official to Mr. Truesdale. At that time, the body of young Price was lying where he had been killed. The death of young Price occurred in the plant of the corporation defendant, where the young man was employed, and where, at the time, he was supposed to be engaged in the proper discharge of his duties to his employer. No one was present, except Mr. Truesdale, representative of the corporation, at the time the death took place. The body of the deceased, who clearly, had been killed by the machinery of the corporation defendant, when Truesdale, and no one else, was present, was lying on the floor in the view of Truesdale, the superintent of the corporation, of Mr. Moore, the general superintendent, and of the witness, Gibson, when the alleged statements of Truesdale were made. The mother and elder brother of the deceased were entitled to a true account from the employer as to how the death of the young man had occurred, if the employer was in possession of the facts. The corporation could only speak through its officers, agents, servants, and employees. The one and only representative of the corporation who knew the facts was Mr. Truesdale.

There is a distinction between evidence admissible as a part of the *res gestæ* and statements made by the representatives of a corporation as to an accident, after the accident has occurred.

Mr. Tiffany makes the matter very clear in his work on Agency (2d Ed.), § 106: "On the one hand, declarations

made at the time of the act by the parties participating therein and part of the *res gestae*—that is, of the surrounding circumstances—are admissible, irrespective of whether the participants are servants of the person sought to be held responsible for the act, and by whomsoever .made. On the other hand, the statement of a servant or agent is admissible as an admission, if it is made when he is engaged in some authorized transaction, and it is within the scope of his authority in that transaction to make the statement. To illustrate: In an action against a railway company, by a person injured by a collision, the declaration of the engineer, referring directly to and characterizing or explaining the occurence, made at the time or immediately afterwards, under its immediate influence, may, under the circumstances of the case, be held part of the *res gestae,* and admissible against the company upon that ground. It might be, however, that some subsequent statement of the engineer as to the cause of the accident, although not part of the *res gestae* would be evidence against the company as an admission, as, for example, if it happened to be made by him in the course of his duty in making a report of the accident to a superior officer. In the one case the declaration of the engineer is admissible as a circumstantial fact, as part of the *res gestae,* because it is the spontaneous utterance of a participant in the event. In the other case his statement is admissible against the company as an admission, because it is made at a time under circumstances when the engineer has authority to make it. If the statement is not admissible, either as a declaration forming part of the *res gestae,* or as an admission, it cannot be received."

In the valuable work, "Commentaries on the Law of Evidence" (2d Ed.), Vol. 3, p. 2207, Mr. Burr W. Jones, discussing the subject of *res gestae,* has this to say: "The present attitude of the Courts, it may be said, is to regard primarily the circumstances. Although it appears that the particular declarations, exclamations, or statements were made

after the occurrence in question, if it also appears that the principal occurrence was such as would be likely to cause more than passing mental effect, and that the conduct of declarant was such as to show that its effect still continued as to him, and the declaration is relevant and relates to the occurrence, it is admissible."

On the same page of the same book, Mr. Jones calls attention to the striking language of a distinguished Judge that "the *res gestae* rule may not be so narrowly construed as to exclude declarations merely because they did not occur 'on the very instant of the grinding of the flesh and bones.'"

The declarations of Mr. Truesdale were not only admissible as a part of the *res gestae,* but they should have been allowed for what they were worth as binding on his codefendant, for at the time they were alleged to have been made he was the representative of the company, on the spot, in charge not only of the plant where the accident had occurred, and the machinery which had brought about the death of young Price, but he was actually, as the representative of the company, in charge of the young man's dead body. The transaction in which the boy had been killed had not completely ended; there was pending still something to be done, the removal of the dead body, and the giving of a true account of the manner in which the death had occurred to those who were entitled to receive the information. See *Snipes v. Augusta-Aiken Railway, etc.,* 151 S. C., 391, 149 S. E., 111; *Williams v. Telegraph Company,* 138 S. C., 286, 136 S. E., 218.

The order of nonsuit appears to have been based on two grounds: First, that the act of Truesdale in starting the machinery, under the circumstances, was an act of a fellow servant; and, second, that there was no evidence of actionable negligence on the part of Truesdale.

The acts of negligence depended upon by plaintiff in her complaint were to the effect that the motor was turned on

by Truesdale when he knew that the deceased was not seen about the plant and must have been on, or near, the belt and machinery; that the motor was turned on without Truesdale assertaining where the deceased was at the time; that there was failure on the part of Truesdale to give proper and adequate warning; that the motor was turned on in violation of the rules and regulations of the defendant company; that Truesdale assumed the duties of the deceased without giving proper notice; and that there was failure on the part of the company, under the circumstances, to furnish the deceased with a safe place in which to work.

We have discussed the facts so far, and shall continue to refer to them, only for the purpose of determining the legal questions for decision. Since we are of the opinion that there will have to be a new trial, we deem it best, in the interest of justice between the parties, that we say as little as possible as to the facts. In addition to what has already been stated, it seems only necessary to remark that there was some evidence on the part of the plaintiff which may have tended to show that, if Mr. Truesdale, before starting the machinery, had taken the proper precaution, he might have ascertained the fact that Price was on the belt of one of the machines, or in such close proximity to the machinery that the "throwing of the switch" by him would have endangered the life of the young man. We should add, however, in full justice to Mr. Truesdale, that there was no evidence offered by the defendants in the trial, and the Court does not therefore have the benefit of Mr. Truesdale's version of the unfortunate accident.

Because of the evidence that Mr. Truesdale, if he had been careful, may have discovered the situation of Price, before the machinery was started, we are required to hold, under the well-recognized rules of this Court in passing upon motions for nonsuits, that there was some evidence to go to the jury on the question of the negligence of the defendants. If there is any evidence at all tending to establish any

negligence as the proximate cause of an injury, the plaintiff should not be nonsuited.

We cannot say either that the evidence established without dispute that the act of Mr. Truesdale, in starting the machinery, was the act of a fellow servant. That, we think, was a question also for the determination of the jury.

True, as it is stated by the defendants in their argument, the recognized principles in this jurisdiction as to fellow servants are those which are so well stated by Mr. Justice Jones, in the case of *Brabham v. Telephone & Telegraph Company*, 71 S. C., 53, 50 S. E., 716, 717, as follows: "In determining who are fellow servants, the test or rule in this State is not whether the servants are of different grade, rank, or authority, one of them having power to control and direct the services of another, but the test is in the character of the act being performed by the offending servant, whether it was the performance of some duty the master owed to the injured servant, the performance of which duty the master had intrusted to the offending servant."

There was no doubt as to the authority of Mr. Truesdale to direct, control, and supervise the services required of Price. The evidence for the plaintiff disclosed that it was the duty of Price alone to start and stop the machinery. No other fellow servant had that right. The superintendent, perhaps, under the evidence, did have that right. If he had the right as a representative of the master, he owed it to the servant, who was charged with the duty of starting and stopping the machinery, to ascertain by reasonable methods the situation before he undertook to start the machinery in motion. The recent cases of *Maddox v. Steel Heddle Manufacturing Company*, 149 S. C., 284, 147 S. E., 327, 328, and *Boling v. Woodside Cotton Mills*, 171 S. C., 34, 171 S. E., 9, are sufficient authorities, in our

opinion, to show that the case should have been submitted to the jury.

In the *Maddox case,* our late beloved Chief Justice Watts, for this Court, used this language:

"It was the master's duty to supervise the operation of all machinery, and to keep it safe and not to permit it to be operated in a dangerous way, thus endangering the lives of other employees. This was a nondelegable duty.

"The master was bound to furnish a safe place and keep it safe by reasonable supervision. The master must protect employees, especially young and inexperienced employees, from known dangers."

The order of nonsuit is reversed, and the case remanded to the Court of Common Pleas of Richland County for a new trial.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.