6943

## MIMS v. HAIR.

1. EXCEPTION.—GROUND OF NONSUIT not urged on Circuit will not be considered on appeal.
2. TRANSACTIONS WITH DECEDENT.—A grandson of testatrix in action by remaindermen for possession of devised lands, having no interest which could be affected by the result of the suit, is not excluded by sec. 400 of the Code from testifying as to acts of life tenant.
3. POWERS—EXECUTORS—ISSUES.—Under the facts and circumstances in this case, whether a sale in his individual capacity by an executor of one tract of land held by him in trust under the will, together with lands owned by him individually, was made by him under the power conferred by the will was properly submitted to the jury.
4. PARTITION—PAROL—STATUTE OF FRAUDS.—If no deeds were ever executed, actual partition and allotment may be made and proved by parol where there is such performance as takes the case out of the statute. That one tenant went into possession of a tract allotted him and cleared a place to build a house, and then sold to another, is such part performance as takes the case out of the statute.

Before MEMMINGER, J., Barnwell, Fall term, 1907. Affirmed.

Action by R. J. Mims and Lizzie Mims against Sarah Hair.  From judgment for plaintiffs, defendant appeals.

*Messrs. Davis & Best,* for appellants.   No argument furnished Reporter.

*Messrs. R. C. Holman* and *B. T. Rice,* contra, cite: *Whether defendant held title from the executors is for jury:* 14 S. C., 540.   *Partition may be proved by oral evidence:* 2 S. E., 884; 2 Rich., 629; 4 John., 212; 21 S. C., 485.

July 7, 1908.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   This is an action by the plaintiffs, as the children of William Mims, for the recovery of the land described in the complaint.

In 1864 Mrs. Ellen Mims died, leaving of force her will, which contained the following provisions:

Second clause: "I give and bequeath to my son, John Robert Mims, my plantation known as the Billy McDonald place; the said plantation, however, is to be appraised by three disinterested freeholders, one to be chosen by him, and two others by the rest of my children; when the value of said plantation is thus ascertained, my said son, John Robert, shall pay over to his sister, Mrs. Mary C. Gunter, wife of Leroy Gunter, one-seventh thereof; to my son, William Mims, one-seventh thereof. * * * "

Fourth clause: "The portion of my estate that my son, William Mims, will take and be entitled to, under this my last will and testament, I give to him for his and during the term of his natural life, and no longer, and at his death I give the same to such child or children as he may leave living, to be divided among them share and share alike; the portion of property hereby given to my said son William is in no wise to be subject to his debts, contracts or engagements, but shall be used by him expressly for the purpose of supporting and educating his children."

Ninth clause: "For the more effectually carrying out the several provisions of this my last will and testament, I do hereby nominate, constitute and appoint my son, Joseph F. Mims, and my friend, J. G. W. Duncan, executors to this my last will and testament, and also vest the titles to all my estates, both real and personal, in my said executors, the better to enable them to see that my directions are strictly followed."

The complaint was in the usual form.

The answer contained a general denial; the defense of the presumption of a grant arising from adverse possession for twenty years; and the defense of adverse possession for the statutory period of ten years.

The jury rendered a verdict in favor of the plaintiffs, and the defendant appealed.

The first exception is as follows: "Because his Honor erred in refusing to nonsuit the plaintiffs, when it appears by the will that the title to this property was in the executors, and they having sold it, the defendant acquired an absolute title thereto."

This exception cannot be sustained, for the reason that the ground herein mentioned was not relied upon when the motion was made.

The second exception is as follows: "Because his Honor erred in allowing A. J. Mims to testify that the land had been divided, and that these parties (meaning the parties under whom plaintiffs claim) occupied said lands; whereas said testimony is in direct conflict with the 400th section of the Code of Civil Procedure; in that his Honor erred in allowing said witness to testify what lands were occupied by William Mims."

The witness, A. J. Mims, is a grandson of the testatrix, but has never had any interest whatever that could be affected by the event of this action.

The third exception is as follows: "Because the uncontradicted testimony shows that, under the will, put in evidence here, the title to said property was vested in the executors,

with power to sell, and the said property was sold and purchased by the defendant, or the one under whom she claims; and it was the duty of the Court to so adjudge as matter of law, and in submitting said question to the jury the Court erred, it appearing by the records, put in evidence, and uncontradicted testimony as aforesaid, that the title to the land is absolutely in the defendant."

On the 20th of November, 1871, Joseph Mims, one of the executors, executed a deed of conveyance in the usual form to John R. Hair of a certain tract of land, containing one hundred and seventy-six acres, more or less, and bounded as follows: "On the north by lands of M. Willis; on the west by lands of E. A. Hayden; on the south by lands of B. O. Stansell, and on the east by lands of J. R. Mims and the said J. R. Hair."

There was testimony to the effect that there was a parol partition of the lands devised to the children of the testatrix; that a tract containing about seventy-six acres was allotted to William Mims, and that another tract was allotted to Joseph F. Mims, one of the executors; that William Mims sold his tract to Joseph F. Mims, and the deed to Hair embraced both tracts.

His Honor, the presiding Judge, stated to the jury, it was conceded, that the deed embraces not only the property named in the complaint, but also the portion of the property which, it is claimed, belonged to the executor individually, as one of the heirs.

There was testimony also tending to show, as contended by the appellant, that the land in dispute was not the same as that which had been allotted to William Mims, but was land which had been devised to his sister Sarah. No reference is made in the deed to the power under which it was executed; nor did the grantor describe himself as executor.

The rule as to the execution of a power is thus stated in *Blagge* v. *Miles,* 1 Story, 426: "The authorities on this subject may not all be easily reconcilable with each other, but the principle furnished by them, however occasionally mis-

applied, is never departed from; that if the donee of the
power intends to execute the power, that intention, however
manifested, whether directly or indirectly, positively or by
just implication, will make the execution valid and opera-
tive.   I agree that the intention to execute the power must
be apparent and clear, so that the transaction is not fairly
susceptible of any other determination.   If it is doubtful,
under all the circumstances, then, that doubt will prevent it
from being deemed an execution of the power."

In that case Mr. Justice Story stated, as the result of the
English authorities, that three classes of cases have been
held sufficient to manifest an intention to execute the
power: (1) where there has been some reference in the
deed or other instrument to the power; (2) or a reference
to the property, which is the subject upon which it is to be
executed; (3) or where the provision in the deed or other
instrument executed by the donee of the power would other-
wise be ineffectual, or a mere nullity; in other words, it
would have no operation except as an execution of the
power.   See also *Bilderback* v. *Boyce,* 14 S. C., 528; *Moody*
v. *Tedder,* 16 S. C., 557; *Lee* v. *Simpson,* 10 Sup. Ct.
Rep., 631.

In the present case the deed by Joseph F. Mims to John
R. Hair would be operative to convey the land that belonged
to him individually, even if it should be determined that the
power confided in the executors was not executed.

In view of the facts and circumstances attending the
sale of the property, the question whether there was an exe-
cution of the power was properly submitted to the jury.

The fourth exception is as follows: "Because his Honor
allowed a witness to testify that there has been an oral par-
tition of said land, and that William Mims drew this tract
(that is, the land described in the complaint).
4    Whereas, it is respectfully submitted, that the deeds
to said lands, if any, would have been the best evi-
dence, and, there being none shown, it is respectfully sub-
mitted that the plaintiffs had no title thereto, because, under

the testimony of the witness, W. W. Woodward, the interest of William Mims, under whom the plaintiffs claim, had long since passed out of the land and the said plaintiffs had no inheritable interest therein."

The testimony showed that there were no deeds, but this fact did not preclude the parties from proving that there was a parol partition. In the case of *Kennemore* v. *Kennemore*, 26 S. C., 251, 255, 1 S. E., 881, the Court uses this language: "We know of no reason why there may not be a parol partition, as well as a parol sale of lands, provided there is sufficient proof of part performance, to take the transaction out of the statute of frauds. Actual possession is deemed the most satisfactory evidence of part performance."

The plaintiffs did not claim title to the land from their father, who had only a life estate; but they took directly under the will of their grandmother, as vested remaindermen. Therefore, no act of the father could defeat their rights, which could not be asserted by them until the death of the life tenant.

The fifth exception is as follows: "Because it appears by the uncontradicted record that there is not a particle of evidence going to show that William Mims ever held possession of the land in dispute. It is in evidence that he went there and cleared a place to build a house, but that is all he ever did, and his Honor erred in not granting a motion for a nonsuit."

A. J. Mims, a witness for the plaintiffs, testified as follows: "Q. This special seventy-six-acre tract we allege Mrs. Hair is in possession now, who occupied that after the death of Mrs. Ellen Mims? A. That tract Willie Mims was in possession a short time, and he sold to Joseph Mims. * * * Q. Just tell us if William Mims got possession of any part of this land, if this land, I read from the complaint, was allotted to him? A. Yes. Q. He took possession of that, William Mims? A. Yes. * * *

30—80

"The Court: You say William Mims was in possession of this property? A. Yes. Q. What do you base that statement on? A. After her death this land he intended to build on it.

"The Court: How do you know that? A. He fixed to build on the land, and after that he sold to Joe Mims.

"The Court: What do you mean by saying he was fixing to build? A. He fixed up the place where he intended to build. * * *

"Q. Don't you know William Mims never went in possession of that land in his lifetime? A. He drawed that tract of land when they drawed, and then commenced cleaning up a place to build a house * * *. Q. You said one time that the only way William went into possession was that he went there and cleaned up a place to build a house? A. I say so yet."

This testimony tended to show that William Mims went into possession of the tract allotted to him, but that he only remained a short time, by reason of the fact that he sold to Joseph F. Mims. This exception is, therefore, overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.