### 6999

### TRIMMIER v. ATLANTA AND CHARLOTTE AIR LINE RY.

1. PARTIES—DEMURRER—WAIVER.—Objection that the action is brought
   by the clerk of the court as administrator in his individual capacity
   when administration is granted to him officially must be taken by
   demurrer, and if not is waived.

2. RAILROAD—CONDUCTOR—SAFE PLACE—NEGLIGENCE.—That the conduc-
   tor of a freight train while walking along the tracks in the yard was
   killed by a train of cars backed on the wrong track, by reason of a
   defective or wrongly placed switch, makes out a *prima facie* case of
   negligence.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ISSUES.—When there is neg-
   ligence by the defendant, whether there was negligence on part of
   plaintiff which contributed as a proximate cause to the injury, is
   for the jury.

4. WILFULNESS—ISSUES.—There being no proof of wilfulness in this
   case, it was error to submit that issue to the jury.
   MR. JUSTICE GARY *thinks there was evidence warranting sending the
   issue to the jury.*

5. DAMAGES.—CHARGE here complained of as instructing the jury if
   they found certain facts to exist they might give plaintiff such dam-
   ages as they thought he was entitled to, was not misleading as not
   giving the jury a guide as to the measure of damages.

6. IBID.—NEGLIGENT KILLING.—The expectancy of life of a beneficiary,
   or that he was dependent on deceased, are not elements in action for
   damages for negligent killing.

7. NEW TRIAL.—This Court will not necessarily grant a new trial where
   the reasons assigned by the Circuit Judge are erroneous, if it is not
   made to appear he would have. granted a new trial but for such
   reasons.

Before WATTS, J., Spartanburg, Fall term, 1907.  Re-
versed.

Action by T. R. Trimmier, administrator of J. W. Alli-
son, against Atlanta and Charlotte Air Line Ry. Co.  From
judgment for plaintiff, defendant appeals.

*Messrs. Abney & Muller* and *Sanders & DePass,* for ap-
pellant.  *Messrs. Sanders & DePass* cite: *This suit is not*

*brought by the administrator:* 8 Rich., 345; 56 S. C., 251; 32 S. C., 376; 41 S. C., 16, 397; 2 Bail., 177, 463; 8 Rich., 345; 2 Strob., 3. *Probate court had no jurisdiction to grant letters to clerk of court:* Code 1902, 2523; 15 Stat., 413, 704. *If proof leaves in conjecture cause of injury, there is no liability on part of master:* 72 S. C., 398; 11 L. R. A. (N. S.), 1068; 179 U. S., 658; 2 Lab. on M. & S., 837; 56 Pac., 90; 56 Wis., 338; 55 Pac., 290; 77 Pac., 515; 23 N. E., 537; 179 U. S., 658; 31 N. E., 220; 2 L. R. A., 905; 72 Pac., 1038; 5 Am. & Eng. Ann. Cas., 167; 6 Thomp. on Neg., 7395; 2 Lab. on M. & S., 830. *What is proximate cause?* 95 U. S., 469. *Plaintiff contributed to this injury:* 77 S. C., 343, 432; 70 S. C., 242; 26 Cyc., 1267; 61 S. C., 494. *No wantonness shown here:* 72 S. C., 355. *The verdict here based on speculation and should not stand:* 24 Pac., 616; 69 Miss., 145; 24 Md., 84; 29 Am. St. R., 143. *Expectancy of beneficiary and dependence on deceased are elements to be considered:* 14 Am. St. R., 69; 46 N. W. R., 79.

*Messrs. I. A. Phifer, John Gary Evans* and *Grier & Park,* contra, cite: *Failure to set the switch properly is negligence of company:* 69 S. C., 394. *Granting letters to plaintiff in his official capacity is immaterial variance:* Code of Proc., 190, 191; 79 S. C., 469. *Jurisdiction of probate court can not be attacked here:* 69 S. C., 272; 58 S. C., 527; 60 S. C., 406. *Court will not pass on contributory negligence unless evidence admits of only one inference:* 77 S. C., 328. *When punitive damages may be awarded:* 78 S. C., 537; 65 S. C., 330; 61 S. C., 189; 64 S. C., 8; 54 S. C., 505; 72 S. C., 1; 74 S. C., 135; 75 S. C., 92, 293; 76 S. C., 202. *A quotient verdict is not illegal:* 68 S. C., 86. *Not necessary to show damage to beneficiary:* 58 S. C., 77; 29 S. C., 303; 47 S. C., 375. *Granting new trial for excessive damages is discretionary with trial Judge:* 66 S. C., 302; 57 S. C., 395.

### STATEMENT OF FACTS.

This is an action to recover damages, alleged to have been sustained as the result of negligence, wantonness and recklessness on the part of the defendant, which caused the death of plaintiff's intestate.

The allegations of the complaint are as follows: .

1. "That the defendant is now, and at the times hereinafter mentioned was a corporation duly chartered under the laws of this State, owning and operating a railroad running from the city of Spartanburg to the city of Greenville, in this State.

2. "That on September 9, 1905, J. W. Allison was employed as a freight conductor by defendant, in running a freight train from Salisbury, N. C., to Greenville, S. C.

3. "That on said day the deceased, J. W. Allison, ran his train into the yards of the defendant, located at Spartanburg Junction, and delivered the same to the yardmaster, whose duty it was to receive the same and take off the cars destined for said junction and other points requiring a shift and add thereto cars from said junction to points beyond.

4. "That defendant had taken from the train the cars destined for other points, or such cars as it decided should not go farther with the train, upon which deceased was conductor, and was proceeding to shift the same onto another track than that, upon which deceased was standing in a safe place, in the discharge of his duty, near his train, but instead of shifting said cars onto another track, as it was its duty to do, the defendant deliberately, carelessly, negligently, wilfully, wantonly, and in utter disregard of the rights of the plaintiff, deceased, and without any notice whatever to him, ran said cars back onto the track, where the deceased was walking, in the discharge of his duty, with his back turned to the cars just taken away, so that said cars overtook the deceased, striking him in his back, hurling him upon the track and rails, so that his body was severed in twain by the wheels of said cars, thereby taking his life instantly, to the great

damage of plaintiff and those for whom he sues, in the sum of fifty thousand dollars.

5. "That said defendant wilfully, wantonly, carelessly, negligently, and in utter disregard of the rights of the deceased, J. W. Allison, failed to provide a proper lookout on the rear of its freight train, which was being shifted in its said yards, and by reason thereof the deceased, J. W. Allison, while in the discharge of his duty, without any warning or notice to him whatever, was ruthlessly run over by said train.

6. "That on the          day of          , 1906, plaintiff was duly appointed administrator of the estate of J. W. Allison, deceased, by J. J. Gentry, probate judge of said county, and brings this action for the benefit of Andrew N. Allison, the father of the deceased, he being unmarried."

The defendant denied each and every allegation of the complaint, and set up the following defenses:

(1). "For a defense defendant alleges that J. W. Allison, while in charge of such train, carelessly and negligently, wilfully and wantonly, failed to perform his duties as such conductor, and carelessly, negligently, wilfully and wantonly, threw open a switch in said yard, thereby causing the said train to be diverted from the track, along which the said Allison was carelessly, wilfully, negligently and wantonly walking, without paying attention and without looking to see whether he had thrown the switch in the proper way, and without paying attention to which track the cars were entering, and that any injuries which came to him were caused by his own acts, as aforesaid, all of which caused and contributed to his death.

(2). "That this defendant further alleges that the deceased, J. W. Allison, assumed all the risks of walking along on the track where he was, and assumed the risks of being hit by a moving car, or engine, when he walked between the rails of the railway company, or so near that a passing car could not pass without hitting him, when he knew, or ought

to have known, that it was dangerous for him to walk between said tracks, or so near to them as to be hit by a moving train or engine; and he further assumed the risks when he threw the switch, as he did, without paying attention to what he was doing, and without throwing it in the way he should have thrown it; and that his death was caused by the risks assumed by him, as hereinbefore stated.

(3). "This defendant, for a still further defense, says that when the deceased walked along between the rails of the railway track, or so near as to be hit by a passing car, which was being moved by his fellow-servants, he assumed the risks of the carelessness and negligence of his fellow-servants; and that his death was caused by the risks assumed by him, as hereinbefore stated."

At the conclusion of the testimony in chief for plaintiff, the defendant moved for a nonsuit on the following grounds:

1. "Because there was no evidence showing any negligence, as alleged in the complaint, on the part of the defendant.

2. "Because the evidence was altogether conjectural as to how the death of J. W. Allison occurred."

This motion was refused.

At the conclusion of all the testimony, the defendant moved the Court to direct a verdict in favor of the defendant, on the grounds:

(1). "Because the action is brought by the plaintiff in his individual capacity and not as administrator. The title of the case is 'T. R. Trimmier, administrator of J. W. Allison, plaintiff, v. Atlanta and Charlotte Air Line Railway Company, defendant.'

(2). "Because even if this action is brought by T. R. Trimmier 'as administrator,' instead of in his individual capacity, yet the evidence is that letters of administration were granted to T. R. Trimmier officially, 'as Clerk of the Court' of Common Pleas for Spartanburg county, instead

of T. R. Trimmier, individually, and the action here is brought by him, not in his official capacity 'as Clerk of the Court,' but by him as 'T. R. Trimmier, administrator;' the evidence showing that there is no such administrator of the estate of J. W. Allison.

(3). "Because the records introduced in evidence show that the probate court has no jurisdiction to grant letters of administration to T. R. Trimmier, in his official capacity, 'as Clerk of the Court of Common Pleas' for Spartanburg county, for the reason that the petition does not set out the 'value, nature or character of the estate' of the deceased, as the act requires.

(4). "Because the petition for letters of administration, which was introduced in evidence, was filed by T. R. Trimmier in his official capacity, 'as Clerk of the Court of Common Pleas' for Spartanburg county, before six months had expired from the date of the death of the intestate; and, therefore, the probate court had no jurisdiction to grant letters of administration to the Clerk of Court of Common Pleas.

(5). "Because there was no negligence shown on the part of the defendant.

(6). "Because the evidence is speculative and conjectural as to how the accident occurred, or as to how the switches were changed.

(7). "Because plaintiff's intestate was guilty of contributory negligence."

This was also refused.

The jury rendered a verdict in favor of the plaintiff for eighteen thousand eight hundred and thirty-three dollars and thirty-three cents; whereupon the defendant made a motion for a new trial, on grounds mentioned in the following order refusing the same:

"A motion was made before me for a new trial in above case, on the grounds set out in the notice, and I have carefully gone over the same. In my opinion the jury were

justified in finding a verdict for the plaintiff under the testimony in the case. There is no doubt in my mind but that the deceased came to his death by the carelessness and negligence of the defendant's failure to furnish safe and suitable appliances and machinery and switch and keep the same in suitable repair, and in operation of the same, and he did not by his own act, in any manner, contribute to his injury. He met his death while on track No. 1, when a train of cars, which would have been switched on track No. 4, was, through the carelessness or wantonness of some one, turned on track No. 1, and collided with cars in front of him, running them back over and killing him. He had heard the order given to switch No. 4, and had every reason to assume that track No. 1, where he was standing, was safe; and it would have been, had ordinary care been taken with the operation of switch and it been kept in reasonably safe repair.

"Complaint is made that verdict shows on its face that it was a compromise verdict. The Court has nothing to do with manner jury arrived at the verdict, so they are governed by the law and evidence, and nothing improper is shown. This has been the law from the case of *Smith* v. *Culbertson* until now. In *Carson* v. *R. R.,* the Supreme Court said a refusal to charge that jury could not find a quotient verdict was no error, so they can arrive at their verdict any way they see fit, as long as they base it upon the law and evidence only. The amount is not excessive; the testimony showed deceased had an expectancy of over twenty-five years; that he was earning from $115 to $125 per month; that he was a splendid official; and, leaving out any punitive damages and the present value of money, as against future earnings, it is not excessive. It is true the amount sounds large, but the verdict is not capricious. On the contrary, the juries of Spartanburg are very conservative in damage suits, and where a good man, through no fault of his, is killed by carelessness and negligence of serv-

ants of railroad, under similar circumstances, the jury ought to award substantial damages, proportioned to injuries sustained. For these reasons, and without going further, it is ordered and adjudged that the motion for a new trial be, and the same is hereby, refused."

The defendant appealed.

## OPINION.

September 1, 1908. The opinion of the Court was delivered by.

MR. JUSTICE GARY (after stating the facts). We will not discuss the exceptions in detail, but under the heads adopted by the appellant's attorneys.

The first question that will be considered is whether his Honor, the presiding Judge, erred in overruling the grounds numbered 1, 2, 3 and 4, in the motion made by the defendant for the Circuit Judge to direct a verdict in favor of the defendant.

These grounds relate to the legal capacity of the plaintiff to bring the action. If there is a defect of parties, the objection should be taken by demurrer or answer (which was not done in this case), otherwise the right to make the objection is waived. *Dawkins* v. *Mathis*, 47 S. C., 64, 24 S. E., 990; *Blackwell* v. *Mortgage Co.*, 65 S. C., 105, 43 S. E., 395; *Delleney* v. *Granite Co.*, 72 S. C., 39, 51 S. E., 531.

We proceed to consider whether there was any testimony tending to show negligence on the part of the defendant.

It was the duty of the defendant to keep switch in such position as to render the tracks in the yard safe while the trains were being made up; and if the plaintiff's intestate was injured while engaged in the performance of his duties as conductor, as a direct and proximate cause of negligence on the part of the defendant in failing to keep the switch in proper position, then the defendant became liable for such injury. *Richey* v. *Ry.*, 69 S. C., 387, 48 S. E., 285.

The appellant's attorneys in their argument say: "The death of Allison was caused by this switch being changed by some one; no one knows who did change it;" thus conceding that the switch was not in proper position when plaintiff's intestate was killed, and that was the direct and proximate cause of his death. This made a *prima facie* case of negligence against the defendant. *Branch* v. *Ry.,* 35 S. C., 405, 14 S. E., 808; *Hicks* v. *Ry.,* 63 S. C., 559, 41 S. E., 753.

Furthermore, the testimony of the witnesses, as stated by the presiding Judge in refusing the motion for a new trial, tended to show negligence on the part of the defendant.

It is, however, unnecessary to refer to the testimony in detail, as we have already shown that there was a *prima facie* case of negligence against the company.

The next question that will be determined is whether the testimony showed that the plaintiff's intestate was guilty of contributory negligence. As there was negligence on the part of the defendant, the question whether that, or the negligence of Allison, was the direct and proximate cause of the injury was properly submitted to the jury.

The next question is presented by the following exception:

"Because his Honor erred in refusing to charge defendant's fifteenth request, to wit: 'The jury are instructed that they can not give any damages for vindictive or punitive damages in this case;' the error being, that there being no evidence of any wilfulness or wantonness on the part of the defendant, it was error on the part of the Court to submit the question of vindictive or punitive damages to the jury."

The appellant's attorneys presented numerous requests to charge (including the fifteenth), and, after reading them to the jury, the presiding Judge said: "Now, gentlemen, I charge you all of these requests, as being good law, except

as modified by my general charge later on." Upon this point the majority of the Court is of the opinion that there was no evidence of wilfulness or wantonness, and that there was reversible error in submitting the question of punitive damages to the jury, contrary to the request of the defendant.

The writer, however, dissents, entertaining the view that, conceding there was no evidence of wilfulness or wantonness on the part of the defendant, it has not been made to appear that a submisison of such question was prejudicial to the rights of the appellant. And, if there was no such evidence, it can not be assumed that the jury rendered a verdict including punitive damages.

Furthermore, there was not a modification of the request, but a distinct proposition was announced, in the general charge. *Harbert* v. *R. R.,* 78 S. C., 537.

We proceed to dispose of the question presented by the following exception:

"Because his Honor erred in modifying the defendant's seventeenth request to charge, and in instructing the jury as follows: 'Now, I charge you, as a matter of law. that if plaintiff's intestate was injured through the negligence of the railroad company, and that this negligence was the direct and proximate cause of the injury, and he did not in any manner contribute towards his injury, then he would be entitled to recover such damages as you think he is entitled to.' The error being, as it is respectfully submitted, that by this charge and modification of defendant's request his Honor permitted the jury to give any amount of damages they might think fit, instead of limiting them to an amount proportional to the injury, resulting from such death, to the person for whose benefit the action was brought."

The presiding Judge has already charged the law, as requested by the defendant. One charge was specific, while the other was general. The general charge was particularly

directed to the question of negligence, and not to the person for whose benefit the action was brought. When the charge is considered in its entirety, there is no reasonable ground for supposing that the jury may have been misled.

The last question for determination arises out of the following exception:

"Because his Honor, in refusing to grant a new trial on the ground that the verdict was excessive, considered only the life expectancy of the deceased, and his probable earnings during such expectancy, whereas, it is respectfully submitted, his Honor should have considered the life expectancy of the father, for whose benefit the action was brought, and the injury done the father, as shown by the evidence, it being respectfully submitted that there was no proof as to such life expectancy, or as to any injury done the father, or as to any amount contributed, by the deceased, for the support of the father, nor was there any proof of anything, either in money or otherwise, given or contributed by the deceased to the father."

We fail to see wherein the probable duration of the father's life has any relevancy to the issues involved, as the amount recovered is the absolute property of the beneficiary, under the terms of the statute.

The cases of *Barksdale* v. *R. R.*, 76 S. C., 183, 56 S. E., 906, and *Hull* v. *R. R.*, 76 S. C., 278, 51 S. E., 28, 10 L. R. A. (N. S.), 1213, sustain the proposition that it is not essential to the recovery of damages that the person for whose benefit the action is brought should be dependent upon the deceased for support or that the beneficiary should suffer pecuniary loss.

But even if the reasons assigned by the Circuit Judge in refusing the motion for a new trial were erroneous, it does not necessarily follow that this Court will order a new trial.

"The effect of erroneous reasons assigned in refusing motions for new trials may be divided into three classes:

1st. When the motion is refused on the ground that the Court is without power to entertain it; 2d. When the motion is based upon a question of law, in which this Court will look to the ground upon which the motion was made for the purpose of determining whether it was erroneously overruled; and 3d. When the motion involves a question of fact, in which case it must appear that the presiding Judge would have ordered a new trial but for the erroneous reasons, otherwise it will be presumed that other reasons would have been assigned if those had not been deemed sufficient." *Reed* v. *Ry.,* 75 S. C., 162, 170, 55 S.E., 218.

The motion for a new trial involved a question of fact; and, even if the reasons assigned by the Circuit Judge in refusing the motion were erroneous, it has not been made to appear that he would have ordered a new trial but for such reasons.

The foregoing views practically dispose of all the questions presented by the exceptions.

The majority of the Court being of the opinion that there was error in not instructing the jury that there was no evidence to warrant punitive damages, it is the judgment of this Court that the judgment of the Circuit Court be reversed and the case remanded for a new trial.